# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# McALLEN DIVISION

| | |
|---|---|
| ADRIANA AGUAYO GUTIERREZ AND ISAAC MUNOZ, INDIVIDUALLY, AND AS NEXT FRIENDS OF I.M., A MINOR <br><br> V. <br><br> UNITED STATES OF AMERICA; MCALLEN HOSPITALS, L.P. d/b/a MCALLEN MEDICAL CENTER MCALLEN MEDICAL CENTER, INC.; PEDIATRIX MEDICAL SERVICES, INC. d/b/a PEDIATRIX MEDICAL GROUP OF TEXAS; SAEED UZ-ZAFER JAVED, M.D.; NAMIREMBE JOAN KAZIBWE, M.D.; PATRICIA YVONNE PEREZ, NP; and LISA MARIE ELIZALDE, NP | CIVIL ACTION NO.: _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Adriana Aguayo Gutierrez and Isaac Munoz, Individually and as Next Friends of I.M., a Minor, hereinafter referred to as Plaintiffs, complaining of The United States of America, McAllen Hospitals, L.P. d/b/a McAllen Medical Center, McAllen Medical Center, Inc., Pediatrix Medical Services, Inc. d/b/a Pediatrix Medical Group of Texas, Saeed Uz-Zafer Javed, M.D., Namirembe Joan Kazibwe, M.D., Patricia Yvonne Perez, NP, and Lisa Marie Elizalde, NP, Defendants and, in support of their causes of action, would respectfully show the Court the following:

# I.
# INTRODUCTION

1.01    This is a medical negligence action brought by Plaintiffs, Adriana Aguayo Guterriez and Isaac Munoz, Individually and as Next Friends for their minor son, I.M., for severe and permanent injuries suffered by I.M. shortly before, during and after his birth as a result of negligent acts or omissions by the Defendants. I.M. suffered a severe brain injury as a result of foreseeable and preventable lack of oxygen at or near the time of birth which was further complicated by foreseeable, preventable and treatable hypoglycemia after birth. I.M. is permanently disabled.

# II.
# PARTIES

2.01    Plaintiff Adriana Aguayo Gutierrez ("Ms. Gutierrez") is an individual residing in San Antonio, Bexar County, Texas.  She is the mother and Next Friend of I.M., a minor.

2.02    Plaintiff Isaac Munoz is an individual residing in San Antonio, Bexar County, Texas. He is the father and Next Friend of I.M., a minor.

2.03    Defendant The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on Jennifer Lowry, United States Attorney for the Southern District of Texas, and designated agent for service of process.  In accordance with temporary measures due to COVID-19, a copy of the Plaintiffs' Original Complaint will be mailed to the Civil Process Clerk, United States Attorney's Office, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002 and a copy emailed USATXS.CivilNotice@usdoj.gov.[1] Service is also effected by serving a copy of the Summons and Complaint on Merrick Garland, Attorney General for the United

---

[1] https://www.justice.gov/usao-sdtx/pr/service-process-united-states-attorney-civil-cases

States of America, by certified mail, return receipt requested, at the Attorney General's Office, ATTN: Civil Process Clerk, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Room 341 Washington, D.C. 20530-0001 and by serving a copy of the Summons on the Department of Health and Human Services Office of General Counsel by certified mail, return receipt requested, at 200 Independence Avenue, S.W., Washington, D.C. 20201 (877-696-6775).

2.04   Defendant McAllen Hospitals, L.P. d/b/a McAllen Medical Center is a foreign limited partnership authorized to and doing business as a health care entity in the State of Texas with a principal place of business in McAllen, Hidalgo County, Texas. McAllen Hospitals, L.P. d/b/a/ McAllen Medical Center may be served with process by serving its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company by certified mail, return receipt requested at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

2.05   Defendant McAllen Medical Center, Inc. is foreign for-profit corporation authorized to and doing business as a health care entity in the State of Texas with a principal place of business in McAllen, Hidalgo County, Texas.  McAllen Medical Center, Inc. may be served with process by serving its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company by certified mail, return receipt requested at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

2.06   Defendant Pediatrix Medical Services, Inc. d/b/a Pediatrix Medical Group of Texas ("Pediatrix") is a foreign corporation licensed under the laws of the State of Texas and doing business in the State of Texas and may be served with process by serving its registered agent for service of process, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

2.07    Defendant Saeed Uz-Zafer Javed, M.D. ("Defendant Javed") is an individual residing in Hidalgo County, Texas and is licensed to practice medicine in the State of Texas. He may be served with process at his residential address, 2507 San Efrain, Mission, Texas 78572-3843; at his business address, 222 E. Ridge Road, Suite 202 C, McAllan, Texas 78503; or wherever he may be found.

2.08    Defendant Namirembe Joan Kazibwe, M.D. ("Defendant Kazibwe") is an individual residing in Hidalgo County, Texas and is licensed to practice medicine in the State of Texas. She may be served with process at her residential address, 810 South Taylor Road Apartment 422, Mission, Texas 78572; at her business address, 222 East Ridge Road, #202C, McAllen, Texas 78503; or wherever she may be found.

2.09    Defendant Patricia Yvonne Perez, NP ("Defendant Perez") is an individual residing in Hidalgo County, Texas and is licensed to practice advanced practice nursing in the State of Texas. She may be served with process at her residential address, 7016 N 1st Street, McAllen, Texas 78504-1928, or wherever she may be found.

2.10    Defendant Lisa Marie Elizalde, NP ("Defendant Elizalde") is an individual residing in Hidalgo County, Texas and is licensed to practice advanced practice nursing in the State of Texas. She may be served with process at her residential address of 906 W Arapaho Avenue, Pharr, Texas 78577, or wherever she may be found.

### III.
### FEDERAL TORT CLAIMS ACT ACTION
### AGAINST THE UNITED STATES OF AMERICA

3.01    This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§ 2671-2680, commonly referred to as the "Federal Tort Claim Act." Liability of the United States is predicated on title 28 U.S.C.

§§ 1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made were proximately caused by the negligent acts and/or omissions of the employees, agents, servants and/or representatives of the United States of America while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual under the laws of the State of Texas.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b).

3.02   Liability of the United States is predicated on title 28 U.S.C. §§ 1346(b)(1) and 2674 as the personal injuries and resulting damages of which complaint is made were proximately caused by the negligent acts and/or omissions of employees or agents, servants and/or representatives of the United States at Nuestra Clinica Del Valle in McAllen, Texas, a Federally Qualified Health Center.

3.03   At all times relevant to these matters, the United States of America through its agency, the Department of Health and Human Services, owned, operated, controlled and/or funded Nuestra Clinica Del Valle, which had Federal Public Health Service deemed status at the time of these events.

3.04   At all times relevant to these matters, Nuestra Clinica Del Valle employed physicians, nurse practitioners, nurses, midwives, physician assistants and other personnel, who were subject to the United States' right of control and/or had substantial supervision and direction over their day-to-day activities.

3.05   At all times relevant to these matters, Nuestra Clinica Del Valle employed Dr. Ventzislav Vanguelov ("Dr. Vanguelov") who provided medical care to Ms. Gutierrez and her unborn baby, I.M. Dr. Vanguelov was an agent or employee of the United States of America

acting within the course and scope of his agency and/or employment while providing medical care to Ms. Gutierrez and her unborn baby for purposes of and subject to the scope, coverages, and protections of the Federal Tort Claims Act afforded governmental agents or employees.

3.06    At all times relevant to these matters, Victoria Lee, PNNP ("PNNP Lee") was an agent or employee of the United States of America acting within the course and scope of her agency and/or employment while providing medical care to Ms. Gutierrez and her unborn baby for purposes of and subject to the scope, coverages, and protections of the Federal Tort Claims Act afforded governmental agents or employees.

3.07    The Federal Tort Claims Act is the exclusive remedy for injuries caused by employees, agents, and servants of Nuestra Clinica Del Valle, including Dr. Vanguelov and PNNP Lee.

3.08    At all times relevant to these matters, Dr. Vanguelov and PNNP Lee were agents, employees, servants and/or representatives of Nuestra Clinica Del Valle acting in the course and scope of their agency and/or employment. The United States is vicariously liable for the acts and/or omissions of these health care providers pursuant to the doctrine of *respondeat superior* and is independently liable for its own negligent acts and/or omissions.

3.09    Venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391 (a)(1) and (c) as the United States is a Defendant and because all or part of the cause of action accrued in the Southern District of Texas.

3.10    On October 23, 2020, Plaintiffs submitted an Administrative Claim on Form 95 to the appropriate claims officer in the Department of Health and Human Services. The claim was acknowledged by the agency on January 13, 2021.  As of this date, a letter of denial of said claim has not been received, more than six months have passed, and the Plaintiffs do hereby exercise

PLAINTIFFS' ORIGINAL COMPLAINT                                                                                                              PAGE 6
*1248613*

their option to consider that their claim is denied. Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## IV.
## ACTION AGAINST MCALLEN MEDICAL CENTER

4.01 This is a medical malpractice action brought against McAllen Hospitals, L.P. d/b/a McAllen Medical Center and/or McAllen Medical Center (hereinafter "McAllen Medical Center") pursuant to Chapter 74 of the Texas Civil Practices and Remedies Code for severe and permanent injuries arising out of the negligent acts and/or omissions of employees, agents, servants, and/or representatives of McAllen Medical Center while acting within the course and scope of employment, agency, servitude, and/or representative capacity.

4.02 This Court has supplemental original subject matter jurisdiction over McAllen Medical Center pursuant to title 28 U.S.C § 1367 as the claims against this Defendant are so related to the claims in the action within the original jurisdiction against Defendant, United States of America, that they form the same case or controversy under Article III of the United States Constitution.

4.03 The Plaintiffs have complied with the notice of claim provisions pursuant to Chapter 74 of the Civil Practices and Remedies Code. On or before April 17, 2020, pursuant to Tex. Civ. Prac. & Rem. Code § 74.051, Plaintiffs timely provided notice to Defendant McAllen Medical Center that Plaintiffs intended to assert a health care liability claim arising out of the medical care rendered to Ms. Gutierrez and to I.M., a minor. Plaintiffs also provided the medical authorizations required by Tex. Civ. Prac. & Rem. Code § 74.052.

4.04 At all times relevant to these matters, the labor and delivery nurses at McAllen Medical Center, who were involved in the medical care of Ms. Gutierrez and her unborn baby, including Nurse Elisa Hilliard, were agents, employees, servants and/or representatives of McAllen

Medical Center acting in the course and scope of their agency and/or employment. McAllen Medical Center is vicariously liable for the acts and/or omissions of these health care providers pursuant to the doctrine of *respondeat superior* and is independently liable for its own negligent acts and/or omissions.

## V.
## ACTION AGAINST DEFENDANTS JAVED, KAZIBWE, PEREZ, ELIZALDE AND PEDIATRIX MEDICAL SERVICES, INC. D/B/A PEDIATRIX MEDICAL GROUP OF TEXAS

5.01    This is a medical malpractice action brought against Defendants Javed, Kaibewe, Perez, Elizade, and Pediatrix pursuant to Chapter 74 of the Texas Civil Practices and Remedies Code for severe and permanent injuries arising out of the negligent acts and/or omissions of these Defendants and/or other employees, agents, servants and/or representatives of Pediatrix.

5.02    This Court has supplemental original subject matter jurisdiction over Defendants Javed, Kazibwe, Perez, Elizalde and Pediatrix pursuant to title 28 U.S.C § 1367 as the claims against these Defendants are so related to the claims in the action within the original jurisdiction against Defendant United States of America that they form the same case or controversy under Article III of the United States Constitution.

5.03    The Plaintiffs have complied with the notice of claim provisions pursuant to Chapter 74 of the Civil Practices and Remedies Code. On or before May 18, 2020, pursuant to Tex. Civ. Prac. & Rem. Code § 74.051, Plaintiffs timely provided notice to Defendants Javed, Kazibwe, Perez, and Elizalde that Plaintiffs intended to assert a health care liability claim arising out of the medical care rendered to I.M., a minor. On or before April 19, 2021, pursuant to Tex. Civ. Prac. & Rem. Code § 74.051, Plaintiffs timely provided notice to Defendant Pediatrix that Plaintiffs intended to assert a health care liability claim arising out of the medical care rendered to I.M., a

minor. Plaintiffs also provided the medical authorizations required by Tex. Civ. Prac. & Rem. Code § 74.052.

5.04 At all times relevant to these matters, Defendants Javed, Kazibwe, Perez, and Elizalde were agents, employees, servants and/or representatives of Pediatrix acting in the course and scope of their agency and/or employment. Pediatrix is vicariously liable for the acts and/or omissions of these health care providers pursuant to the doctrine of *respondeat superior* and is independently liable for its own negligent acts and/or omissions.

## VI.
## FACTS

6.01 In January 2019, Adriana Aguayo Gutierrez ("Ms. Gutierrez") was expecting a baby, her fourth child. On January 24, 2019, Ms. Gutierrez sought prenatal care at Nuestra Clinica Del Valle and was treated by Victoria Lee PNNP ("PNNP Lee"), a perinatal nurse practitioner, and Dr. Ventzislav Vanguelov ("Dr. Vaguelov"), an obstetrician.

6.02 Ms. Gutierrez reported that her last menstrual period was on July 5, 2018. Based on her last menstrual period, the estimated gestational age of her baby was 29 weeks, and her estimated due date was April 12, 2019. At this prenatal visit at Nuestra Clinica Del Valle, Ms. Gutierrez had an ultrasound. PNNP Lee and Dr. Vaguelov chose to rely on the interpretation of the ultrasound performed at 29 weeks gestation and chose to change Ms. Gutierrez' estimated due date from April 12th to May 5, 2019. Ultrasounds at that gestational age are unreliable to determine estimated gestational age and have a significant standard deviation of several weeks. Neither PNNP Lee nor Dr. Vanguelov ordered a follow up ultrasound to evaluate the gestational age of the baby or the estimated due date. As a result of the change in her due date, Ms. Gutierrez's pregnancy continued significantly past her actual due date which decreased the oxygen carrying capacity of the placenta and put Baby I.M. at risk of perinatal asphyxia,

meconium aspiration, hypogyclemia, persistent pulmonary hypertension, cerebral palsy, and death.

6.03    Ms. Gutierrez was scheduled for induction of labor on May 3, 2019.  She was admitted to McAllen Medical Center at approximately 03:08 on May 3, 2019.  An electronic fetal heart monitor was applied to her abdomen at approximately 03:16 to monitor the baby's heart rate.  The fetal heart monitor tracing showed minimal variability of the heart rate which was an indication of potential hypoxia.

6.04    At approximately 04:10, Nurse Elisa Hilliard ("Nurse Hilliard") noted that the NST (non-stress test) was non-reactive, also an indication of potential hypoxia, and that the NST results were called to the provider.  At approximately 04:13, Nurse Hillard performed a vaginal exam that was reported as closed/50%/-3 meaning that Ms. Gutierrez's cervix was 50% effaced but not dilated, and the baby's presenting part (the baby's head) was situated at the -3 station of the mother's pelvis (high in the pelvis).  This assessment indicated that the baby was remote from vaginal delivery and would not be expected to be delivered vaginally for several hours. These assessments indicated that the baby needed to be delivered urgently by cesarean section to protect the baby and prevent acidosis and hypoxic-ischemic injury.

6.05    At 04:30, Nurse Hilliard charted the baby's heart rate had a baseline rate of 125 bpm (beats per minute), minimal variability, absent accelerations, and prolonged decelerations. This heart rate pattern was abnormal and indicated that the baby is at risk of injury from lack of oxygen.  Nurse Hilliard charted that the primary health care provider had been notified and that they were to prepare for primary cesarean section.

6.06    At 04:31, Nurse Hillard noted that Ms. Gutierrez consented to have a cesarean section.

6.07    By 05:00 Dr. Vanguelov had not arrived at the hospital to deliver the baby. Nurse Hillard did not call Dr. Vanguelov back when he did not arrive at the hospital and did not notify the charge nurse or another physician that Ms. Gutierrez needed to be delivered or that Dr. Vanguelov had not arrived at the hospital.

6.08    At 06:02, the baby's heart rate decelerated or dropped below the normal range to 100 beats per minute, a condition known as fetal bradycardia. At 06:06, Nurse Hilliard called Dr. Vanguelov who stated that he was in the parking lot.  The fetal heart monitor tracing stopped tracing the baby's heart rate at 06:08 and was apparently restarted in the operating room and 06:10. A certified registered nurse anesthetist (CRNA) placed an emergency spinal anesthetic at 06:16.  Baby I.M. was delivered by emergency cesarean section at 06:20.  He was born without a detectable heart rate and with no respiratory effort.  He was noted to be post-term with skin peeling. His Apgar scores, measures of his condition at and shortly after birth, were depressed and abnormally low at 0 at one minute, 1 at five minutes, and 5 at 10 minutes ($0^1\ 1^5\ 5^{10}$).  I.M. had metabolic acidosis as a result of lack of oxygen and was diagnosed with hypoxic ischemic encephalopathy, which is an abnormal neurologic condition caused by lack of oxygen.  At 06:40, his capillary base excess was -22.3 which is a laboratory assessment reflecting severe metabolic acidosis.

6.09    Baby I.M. was intubated and given PPV (positive pressure ventilation) with 100% oxygen. He was given chest compressions as his heart rate was less than 60 beats per minute.  He was given epinephrine via ETT tube and was transported to the NICU in critical condition.  The cooling protocol was initiated.  The cooling protocol is a neuroprotective treatment in which the body temperature of a baby who has suffered asphyxia and acidosis is cooled in an attempt to protect and/or minimize injury to the baby's brain.

6.10    Baby I.M. was noted to have decreased response to stimuli, few spontaneous respirations, peeling skin and a post-term appearance.

6.11    While Baby I.M. was in the NICU, there were periods of time in which the medical providers were not adequately monitoring and/or treating his glucose levels. Babies who have suffered hypoxic ischemic injury as a result of asphyxia and acidosis may develop hypoglycemia. In the setting of hypoxic ischemic injury, hypoglycemia causes increased morbidity with worsened and/or more extensive brain injury and causes increased mortality.

6.12    Baby I.M. was diagnosed with severe hypoxic-ischemic encephalopathy and has severe, permanent, irreversible brain injury. Baby I.M is permanently disabled and will require 24 hour a day skilled nursing and/or medical care for the rest of his life.

## VII.
## CLAIMS FOR NEGLIGENCE AGAINST DEFENDANTS

7.01    **The United States of America:**

Defendant The United States of America, by and through its agents, apparent agents, employees, servants, and representatives, including Nuestra Clinica del Valle, Dr. Vanguelov and/or PNNP Lee, undertook duties to provide proper medical care to Ms. Gutierrez and her unborn baby, I.M., with the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonable and prudent health care providers.

7.02    Notwithstanding these duties undertaken by the Defendant, the United States of America breached the duties to Ms. Gutierrez and her unborn baby, I.M. and was negligent in at least the following:

- Failing to properly evaluate and date Ms. Gutierrez's pregnancy to determine the accurate gestational age of Baby I.M. and the accurate due date;

- Failing to timely and appropriately monitor Ms. Gutierrez's fetal heart monitor tracing;

- Failing to properly assess and interpret Ms. Gutierrez's fetal heart monitor tracing;

- Failing to provide timely intervention, including intrauterine resuscitation, to maximize oxygen delivery to Baby I.M.;

- Failing to timely determine that cesarean section delivery was necessary;

- Failing to timely order and perform a cesarean section delivery; and

- Failing to institute a safe plan of care for Ms. Gutierrez and Baby I.M.

7.03   Defendant The United States of America, by and through its agents, apparent agents, employees, servants, and representatives, including Nuestra Clinica del Valle, additionally and/or in the alternative, is independently liable for its own negligent acts and/or omissions, including but not limited to the following:

- Failing to formulate, implement and/or enforce appropriate policies and procedures;

- Failing to provide proper training for its agents and/or employees; and

- Failing to properly supervise its agents and/or employees.

7.04   The negligent acts and/or omissions of the United States were a proximate cause of the progressive hypoxemia, hypoxia, ischemia, asphyxia, acidosis and hypoxic-ischemic injury suffered by Baby I.M. and a proximate cause of the damages sustained by the Plaintiffs.

7.05   **McAllen Medical Center:**

Defendant, McAllen Medical Center, acting by and through its employees, agents, servants and/or representatives, including Nurse Elisa Hilliard, undertook duties to provide proper medical care to Ms. Gutierrez and her unborn baby, I.M., with the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonable and prudent health care providers.

7.06   Notwithstanding these duties undertaken by the Defendant McAllen Medical Center, the Defendant breached its duties to Ms. Gutierrez and her unborn baby, I.M. and was

negligent in at least the following:

- Failing to timely and appropriately monitor Ms. Gutierrez's fetal heart monitor tracing;

- Failing to properly assess and interpret Ms. Gutierrez's fetal heart monitor tracing;

- Failing to provide timely intervention, including intrauterine resuscitation, to maximize oxygen delivery to Baby I.M.;

- Failing to timely report abnormalities in the baby's heart rate to Dr. Vanguelov;

- Failing to notify the charge nurse and/or another physician that Dr. Vanguelov had not arrived at the hospital;

- Failing to timely determine that cesarean section delivery was necessary and/or advocate for an evaluation of the fetal heart monitor tracing by another physician;

- Failing to utilize the chain of command to obtain an evaluation of the fetal heart monitor tracing by another physician;

- Failing to advocate for an emergency cesarean section;

- Failing to timely prepare for an emergency cesarean section;

- Failing to expedite the delivery of I.M.; and/or

- Failing to institute a safe plan of care for Ms. Gutierrez and Baby I.M.;

7.07   Defendant McAllen Medical Center, additionally and/or in the alternative, is independently liable for its own negligent acts and/or omissions, including but not limited to the following:

- Failing to formulate, implement and/or enforce appropriate policies and procedures;

- Failing to provide proper training for its agents and/or employees; and

- Failing to properly supervise its agents and/or employees.

7.08   The negligent acts and/or omissions of Defendant McAllen Medical Center were a proximate cause of the hypoxemia, hypoxia, ischemia, asphyxia, acidosis and hypoxic-ischemic injury suffered by Baby I.M. and the damages sustained by the Plaintiffs.

7.09 **Javed, Kazibwe, Perez, Elizalde, and Pediatrix:**

Defendants Javed, Kazibwe, Perez, Elizalde and Pediatrix, acting by and through these employees, agents, servants and/or representatives, undertook duties to provide proper medical care to Baby, I.M., with the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonable and prudent health care providers.

7.10 Notwithstanding these duties undertaken by Defendants Javed, Kazibwe, Perez, and Elizalde, they breached their duties to Baby I.M. and were negligent in at least the following:

- Failed to properly monitor Baby I.M.'s glucose levels;
- Failed to timely determine that Baby I.M. was hypoglycemic;
- Failed to timely provide appropriate treatment for hypoglycemia; and/or
- Other acts/omissions anticipated to be discovered.

7.11 At all times relevant to these matters, Defendants Javed, Kazibwe, Perez, and Elizalde were agents, employees, servants and/or representatives of Defendant Pediatrix acting within the course and scope of their agency and/or employment when providing medical care to Baby I.M. at McAllen Medical Center. Pursuant to the doctrine of *respondeat superior*, Pediatrix is vicariously liable for the negligent acts and/or omissions of Defendants Javed, Kazibwe, Perez, and Elizalde.

7.12 Defendant Pediatrix, additionally and/or in the alternative, is independently liable for its own negligent acts and/or omissions, including but not limited to the following:

- Failing to formulate, implement and/or enforce appropriate policies and procedures;
- Failing to provide proper training for its agents and/or employees; and
- Failing to properly supervise its agents and/or employees.

7.13 These negligent acts and/or omissions by Defendants Javed, Kazibwe, Perez, Elizalde, and Pediatrix were singularly and/or cumulatively a proximate cause of the injuries suffered by I.M. and the damages sustained by the Plaintiffs.

## VIII.
## DAMAGES

8.01 As a direct and proximate result of the Defendants' acts and/or omissions as set forth above, Baby I.M. sustained severe, permanent brain damage with significant physical, mental, emotional, social and economic limitations and effects. These limitations and effects will continue for the rest of his life. The damages sustained by Baby I.M. include, but are not limited to, the following:

- Physical pain and suffering sustained in the past and that in reasonable probability will be sustained in the future;

- Mental anguish sustained in the past and that in reasonable probability will be sustained in the future;

- Physical and mental impairment sustained in the past and that in reasonable probability will be sustained in the future;

- Loss of enjoyment of life sustained in the past and that in reasonable probability will be sustained in the future;

- Disfigurement sustained in the past and that in reasonable probability will be sustained in the future;

- Medical, nursing, therapy, and rehabilitation expenses that in reasonable probability will be sustained in the future after I.M. reaches the age of 18 years;

- Loss of earning capacity that in reasonable probability will be sustained in the future after I.M. reaches the age of 18 years;

- Special adaptive living expenses that in reasonable probability will be sustained in the future after I.M. reaches the age of 18 years; and

- Special educational expenses that in reasonable probability will be sustained in the future after I.M. reaches the age of 18 years.

8.02    As a direct and proximate result of the Defendants' acts and/or omissions as set forth above, Plaintiffs Adriana Gutierrez and Isaac Munoz seek to recover for the economic damages incurred and to be incurred on I.M.'s behalf until I.M. reaches majority. Those damages, include, but are not limited to, damages, as follows:

- Medical, nursing, therapy, and rehabilitation expenses for I.M. sustained in the past and that in reasonable probability will be sustained in the future until I.M. reaches the age of 18 years;

- Special educational expenses for I.M. sustained in the past and that in reasonable probability will be sustained in the future until I.M. reaches the age of 18 years; and

- Special adaptive living expenses for I.M. sustained in the past and that in reasonable probability will be sustained in the future until I.M. reaches the age of 18 years.

## IX.
## REQUEST FOR JURY TRIAL

9.01    As to the claims against Defendants McAllen Medical Center, Inc., Javed, Kazibwe, Perez, Elizalde, and Pediatrix, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiffs request a trial by jury on such claims.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, and that upon final determination of these causes of action, Plaintiffs receive a judgment against Defendants for actual damages in an amount as the evidence may show is sufficient to compensate them for their injuries and damages, pre-judgment and post-judgment interest, costs of court, and all other and further relief allowed by the law and to which Plaintiffs are entitled to receive.

Respectfully submitted,

    */s/ Les Weisbrod*
**Les Weisbrod**
State Bar No. 21104900
lweisbrod@millerweisbrod.com
**Luke Metzler**
State Bar No. 24072902
lmetzler@millerweisbrod.com
**Jennifer Myers**
State Bar No. 24084471
jmyers@millerweisbrod.com
**Miller Weisbrod, L.L.P.**
11551 Forest Central Drive
Forest Central II, Suite 300
Dallas, Texas 75243
(214) 987-0005 (Telephone)
(214) 987-2545 (Facsimile)


    */s/ Laura Brown*
**Laura Brown**
State Bar No. 19238020
**Laura Brown Law Firm, PLLC**
brown@trialfirm.com
Bridgeview Center, 2nd Floor
7901 Fish Pond Road
Waco, Texas 76710
(254) 741-6200
(254) 741-6300 (FAX)